# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Amy Hover; Brad Jordan; and**
**Gary Jordan,**

           **Plaintiffs,**

**v.**                                      **Case No. 14-2410-JWL**

**Unified Government of Wyandotte County**
**and Kansas City, Kansas et al.,**

           **Defendants.**

## MEMORANDUM & ORDER

Plaintiffs Amy Hover, Brad Jordan and Gary Jordan filed suit under 42 U.S.C. § 1983 alleging that defendants violated their Fourth, Fifth and Fourteenth Amendment rights in connection with defendants' seizure and subsequent sale of plaintiffs' property to satisfy tax indebtedness of delinquent taxpayers. The seizure was executed by agents of the Kansas Department of Revenue (KDOR) and the Wyandotte County Sheriff's Department. This matter is presently before the court on a motion to dismiss filed by the KDOR defendants—KDOR agent Carrie Purney-Crider; KDOR's Secretary Nick Jordan; and KDOR's Director of Taxation Steve Stotts. Specifically, the KDOR defendants move to dismiss plaintiffs' amended complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.[1] As will be explained, the motion is granted in part and denied in part.[2]

---

[1] In their motion to dismiss, the KDOR defendants assert that the court lacks personal jurisdiction over them because they were never served with the amended complaint. Any argument about service is premature as it was raised long before the expiration of the 120-day service period set forth in Federal Rule of Civil Procedure 4(m). The KDOR defendants appear to concede the issue, as they have failed to press it in their reply brief.

**Background**

The KDOR defendants' motion to dismiss is based primarily on Federal Rule of Civil Procedure 12(b)(6). In analyzing that motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc*., 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Consistent with this standard, the following well-pleaded allegations, taken from plaintiffs' amended complaint, are accepted as true for purposes of defendants' motion.

On September 18, 2012, the Kansas Department of Revenue issued a writ of execution to seize property owned by Emmett Jordan and his spouse Amy Jordan at their residence in Kansas City, Kansas to satisfy the tax liabilities of Emmett and Amy Jordan. The property to be seized pursuant to the writ included 22 vehicles and any other real or personal property owned by Emmett Jordan and Amy Jordan. The writ was executed by more than 80 agents, including defendant Carrie Purney-Crider and other unnamed agents of both the Kansas Department of Revenue and the Wyandotte County Sheriff's Department. Plaintiffs allege that the agents were all armed with automatic weapons and dressed in combat gear.

---

[2] In connection with their motion to dismiss, the KDOR defendants seek an award of attorneys' fees under 42 U.S.C. 1988 on the grounds that plaintiffs' suit is vexatious, frivolous, or brought to harass or embarrass the defendants." The request is summarily denied.

Plaintiff Gary Jordan was present on Emmett Jordan's property at the time the writ was executed.  The amended complaint does not allege the relationship, if any, between Gary Jordan and Emmett or Amy Jordan.  Plaintiff Gary Jordan, identified in the amended complaint as a "man in his 60s" was allegedly "shoved to the ground by officers while they pointed automatic weapons at him" and "was detained in a state car for more than two hours with no explanation of why he was being held."  Plaintiffs Amy Hover and Brad Jordan were not present on the property at the time the writ was executed and the amended complaint does not allege the relationship between these plaintiffs and Emmett or Amy Jordan.  According to the allegations in the amended complaint, items of personal property belonging to plaintiffs were seized and removed from Emmett Jordan's residence despite the fact that such property was not identified in the writ.

Upon learning that agents had seized their personal property, plaintiffs notified "defendants" via phone calls and letters that they claimed ownership of certain property that had been seized.  Plaintiffs assert that they repeatedly requested that the Department of Revenue return their personal property but that the KDOR refused to return the items wrongfully seized and that a large portion of those items were sold at auction by the KDOR.  On October 15, 2012, plaintiffs provided written notice to Ms. Purney-Crider, including proof of ownership, that many of the items seized in fact were owned by plaintiffs.  Plaintiffs allege that the KDOR caused a trailer owned by plaintiff Amy Hover to be titled in KDOR's name despite notice that the trailer was owned by Ms. Hover and had been titled in her name.  After learning that the KDOR intended to sell plaintiffs' property at auction, plaintiffs again provided notice to Ms. Purney-Crider that some of the items intended to be sold at auction were owned by plaintiffs.  Plaintiffs

3

allege that they received no response "from defendants" and the auction proceeded as scheduled. They further contend that defendant Nick Jordan, the Secretary of the KDOR, adopted and implemented policies, customs or practices that permitted employees to take property without lawful justification from innocent parties and to do so using excessive force when other more reasonable and less drastic methods are available.  Plaintiffs further allege that Mr. Jordan failed to adequately train or supervise Ms. Purney-Crider.   Other than a preliminary paragraph identifying defendant Steve Stotts as the Director of Taxation for the KDOR, there are no allegations in the amended complaint concerning Mr. Stotts.[3]

In their amended complaint, all plaintiffs allege that the KDOR defendants violated their Fourth, Fifth and Fourteenth Amendment rights based on unlawful search and seizure and deprivation of property without due process or just compensation.  In addition, plaintiff Gary Jordan asserts claims based on the use of excessive force and unlawful detention.  The KDOR defendants move to dismiss all claims against them.

**Subject Matter Jurisdiction**

In their motion to dismiss, the KDOR defendants assert that the Eleventh Amendment prohibits this court from exercising subject matter jurisdiction over plaintiffs' claims.[4]  This

---

[3] The court presumes that the absence of any substantive allegations concerning Mr. Stotts was inadvertent, as plaintiffs have attached to their response a proposed second amended complaint that sets forth the same allegations against Mr. Stotts as are alleged against defendant Nick Jordan.

[4] In their motion, defendants also contend that the Tax Injunction Act deprives this court of subject matter jurisdiction over plaintiffs' claim.  Defendants have expressly abandoned this argument in their reply brief.

4

argument is premised on defendants' related argument that plaintiffs have sued each of the KDOR defendants only in their official capacities such that dismissal is required in any event. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).[5]  In support of this argument, defendants highlight that plaintiffs have expressly indicated that Mssrs. Jordan and Stotts have been named in their official capacities and that the court should presume that Ms. Purney-Crider is named in her official capacity.  Plaintiffs, in response, seek permission to amend their complaint to include individual capacity claims against Mssrs. Jordan and Stotts (in addition to the official capacity claims) and to clarify, to the extent the court deems necessary, that they are asserting claims against Ms. Purney-Crider only in her individual capacity.

The court concludes that plaintiffs may amend their complaint to assert claims against defendants Jordan and Stotts in their individual capacities to the extent that such claims are consistent with the remaining aspects of the court's memorandum and order.  In permitting that amendment, the court rejects defendants' contention that the amendment is barred by the statute of limitations and does not relate back to the amended complaint.  Significantly, defendants do not dispute that the amendment arises out of the same occurrence as set forth in the amended complaint.  They do not contend that they will be prejudiced in any respect by having to defend against individual-capacity claims.  Finally, they do not dispute that they had sufficient notice of potential individual-capacity claims—a fact evidenced by defendants' assertion of a qualified immunity defense as well as the amended complaint's request for punitive damages.  In other

---

[5] While the Eleventh Amendment does not bar an action against an official in his or her official capacity for prospective injunctive or declaratory relief, *see Buchheir v. Green,* 705 F.3d 1157, 1159 (10th Cir. 2012), it is undisputed that plaintiffs do not seek such relief in their amended complaint.  Rather, plaintiffs seek only monetary damages in their amended complaint.

words, Mssrs. Jordan and Stotts have been on notice at all times that plaintiffs likely intended to assert claims against them in their individual capacities. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 377-78 (5th Cir. 2010) (amendment substituting individual capacity claim for official capacity claim satisfied Rule 15(c)(1)(C) where defendant had sufficient notice that claim would be brought in individual capacity and suffered no prejudice in preparing defense). For these reasons, the court will permit the amendment consistent with other admonitions in this memorandum and order.  Because plaintiffs have not responded to the merits of defendants' arguments concerning the dismissal of the official capacity claims against Mssrs. Jordan and Stotts, those claims are dismissed.

Similarly, the court will permit plaintiffs to clarify that the claims asserted against defendant Purney-Crider are asserted only in her individual capacity, which should come as no surprise to Ms. Purney-Crider.  She has asserted qualified immunity as a defense to the claims (indicating an awareness that she had been sued in her individual capacity) and the amended complaint seeks punitive damages based in part on her alleged conduct.  Moreover, the amended complaint as it relates to Ms. Purney-Crider reads like an individual capacity suit. *See id*.  While defendants urge that the claim should be deemed an official capacity claim because Ms. Purney-Crider was not served individually but only through the Kansas Department of Revenue, the court—regardless of how and whether Ms. Purney-Crider was served—will permit the clarification as indicated.  In other words, even if the court were to conclude that plaintiffs have asserted only an official capacity suit against Ms. Purney-Crider, the court would nonetheless permit plaintiffs to amend their complaint at this juncture.  Thus, regardless of whether the court permits a "clarification" or an "amendment," plaintiffs may pursue claims against Ms. Purney-

6

Crider in her individual capacity and may file an amended complaint to the extent it is consistent with the additional admonitions in this memorandum and order.

For the foregoing reasons, the court dismisses any official capacity claims against the KDOR defendants and will permit plaintiffs to clarify or amend their complaint to assert individual capacity claims against the KDOR defendants.

**Failure to State a Claim**

In addition to challenging this court's subject matter jurisdiction over plaintiffs' claims, defendants also seek dismissal of the amended complaint for failure to state a claim. Specifically, defendants contend that they are absolutely immune from liability for money damages; that the claims as alleged do not satisfy the pleading requirements of *Twombly* and *Iqbal*; and that plaintiffs' allegations, even if true, simply do not state claims for the constitutional violations alleged. The court addresses each of these arguments in turn.

*Absolute Immunity*

Next, the KDOR defendants contend that dismissal of the amended complaint is required because, having acted pursuant to a judicially-issued warrant, they are absolutely immune from liability for money damages. This argument, premised solely on the Tenth Circuit's decision in *Wilcox v. Magill*, 468 Fed. Appx. 849 (10th Cir. 2012), is rejected. Defendants are correct that "officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Id.* at 852-53. Consistent with that principle, the Circuit in *Wilcox* found that to the extent that state

7

officers acted pursuant to a writ of execution, they were entitled to immunity. *See id.* at 852-53. As the Circuit noted however, absolute immunity "does not apply" when officers are alleged to have exceeded the scope of the writ—which is what plaintiffs have alleged in their amended complaint. According to plaintiffs, the writ did not authorize defendants to seize property not covered in the writ. Moreover, plaintiffs here alleged constitutional violations stemming from conduct occurring after the execution of the writ, including defendants' refusal to return plaintiffs' property after plaintiffs notified defendants about their claim of ownership in the property and defendants' subsequent sale of the property at auction without any attempt to resolve the ownership claims. Defendants, then, have not shown that they are absolutely immune from liability for the acts alleged in the amended complaint.

*Pleading Deficiencies Under Twombly and Iqbal*

Defendants move to dismiss the claims in the amended complaint on the grounds that plaintiffs have not alleged plausible claims for relief under *Twombly* and *Iqbal*. The court begins its analysis with those claims asserted against defendant Nick Jordan. According to the amended complaint, Mr. Jordan failed to adequately train and supervise Ms. Purney-Crider and he adopted and implemented policies, customs or practices permitting DOR employees to take property without lawful justification from innocent parties and to use excessive force when other more reasonable and less drastic methods are available. There are no other substantive allegations in the amended complaint concerning Mr. Jordan. With respect to the failure-to-train allegation, plaintiffs do not allege that any violation committed by Ms. Purney-Crider was the result of any deficiency in her training or supervision. This claim, then, is subject to dismissal.

8

*See Dodds v. Richardson*, 614 F.3d 1185, 1212-13 (10th Cir. 2010) (failure-to-train and failure-to-supervise theories of liability require showing that injury resulted from failure); *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (plaintiff must establish an affirmative link between supervisor's failure to supervise and constitutional deprivation). Plaintiffs contend in their response that the alleged conduct by the DOR—the decision to send a "military-style presence to collect delinquent taxes; to seize the property of innocent individuals; and to sell that property despite competing claims of ownership without providing an opportunity to be heard—is so unconscionable as to establish a failure to train and supervise. Under Tenth Circuit law, plaintiffs may not rely solely on the constitutional violation to establish a failure-to-train or failure-to-supervise theory of liability. *See Lewis v. McKinley County Bd. of County Commr's*, 425 F.ed Appx. 723, 726 (10th Cir. 2011) (allegation that officer was "obviously ill-trained" in light of alleged violation did not state a claim against municipality); *Hook v. Regents of Univ. of California*, 394 Fed. Appx. 522, 536 (10th Cir. 2010) (to establish supervisor's liability under 1983, plaintiff must show more than constitutional violation by supervisor's subordinate). Thus, even if plaintiffs had included this allegation in their amended complaint, the court would still dismiss the claim.

Similarly, the allegation that Mr. Jordan adopted and implemented policies, customs or practices permitting DOR employees to take property without lawful justification from innocent parties fails to state a plausible claim for relief under *Twombly* in the absence of any factual allegations that the constitutional violations resulted from the adoption or implementation of

such policies.[6]  Moreover, plaintiffs assert throughout their response that they do not intend to allege any constitutional violations based on the seizure of property at the time of the execution of the writ but that the violations occurred when the DOR refused to return plaintiffs' property and then sold the property without providing due process to plaintiffs.   The allegations concerning Mr. Jordan's implementation of policies permitting the seizure of property without justification, then, seem to have no bearing on the claims that plaintiffs intend to pursue.   In any event, plaintiffs do not address their policy-or-practice claim in their response and assert only that they notified Mr. Jordan directly about Ms. Purney-Crider's failure to return their property. It appears, then, that plaintiffs intend to pursue their claims against Mr. Jordan on a theory that is distinct from the theory asserted in the amended complaint.   Thus, while the allegations in the amended complaint fail to state a plausible claim for relief for the reasons set forth above, the court will permit plaintiffs to amend their complaint to the extent they are able to connect Mr. Jordan to the alleged due process violations committed by the DOR.

While the amended complaint contains no substantive allegations aimed at defendant Steve Stotts, plaintiffs have attached to their response a proposed second amended complaint that asserts against Mr. Stotts the same allegations as asserted against Mr. Jordan.  For the same reasons as explained in connection with the claims against Mr. Jordan, then, the court would dismiss the allegations against Mr. Stotts even if they had been made in the amended complaint.

---

[6] The court also dismisses the claim that Mr. Jordan adopted and implemented policies permitting DOR employees to use excessive force as there is no allegation in the amended complaint (or in plaintiffs' response) that any DOR employee used excessive force against any plaintiffs or, more specifically, that Ms. Purney-Crider participated in any respect in the conduct underlying Gary Jordan's excessive force claim.

In their response, plaintiffs contend that Mr. Stotts was notified by plaintiffs about Ms. Purney-Crider's refusal to return their property and about their ownership interests in the property but that Mr. Stotts took no action to ensure that his department provided plaintiffs an opportunity to be heard on their ownership claims.  Through their response, then, plaintiffs have indicated that they desire to pursue claims against Mr. Stotts on a different theory than alleged in their proposed second amended complaint.  The court will permit plaintiffs to amend their complaint to include substantive claims against Mr. Stotts in his individual capacity to the extent they are able to assert factual allegations that plausibly link Mr. Stotts to the constitutional violations allegedly committed by the DOR.

Defendants next assert that the amended complaint fails to state a plausible claim for relief against Ms. Purney-Crider based on the seizure and sale of plaintiffs' property.  According to defendants, the amended complaint does not specifically assert what role Ms. Purney-Crider had in executing the writ, in refusing to return plaintiffs' property or in selling plaintiffs' property.  The court agrees that plaintiffs must amend their complaint to include specific allegations as to Ms. Purney-Crider's involvement in the constitutional violations alleged.  While plaintiffs' amended complaint includes certain allegations directed toward Ms. Purney-Crider (for example, that plaintiffs provided written notice to Ms. Purney-Crider on October 15, 2012 that some of the items seized belonged to plaintiffs), the amended complaint is too speculative as to other allegations that might be related to Ms. Purney-Crider (for example, the allegation that plaintiffs "immediately notified Defendants via phone calls" that they owned property seized during the execution of the writ).  Moreover, in response to the motion to dismiss, plaintiffs have set forth allegations not included in their amended complaint.  Plaintiffs

11

allege, for example, Ms. Purney-Crider "signed the property-custody receipt" for the seizure of a vehicle owned by plaintiff Amy Hover and for other items not listed in the writ.  Plaintiffs also allege in their submissions that Ms. Purney-Crider was directly responsible for allowing a car owned by Ms. Hover to be registered to the Department of Revenue.  Clearly, then, plaintiffs have additional facts regarding Ms. Purney-Crider's involvement in the alleged constitutional violations that have not been included in the amended complaint.  Plaintiffs, who must file a second amended complaint in any event as indicated in other portions of this memorandum and order, shall clarify what role Ms. Purney-Crider played in the seizure, retention and sale of plaintiffs' property.

Defendants also contend that the amended complaint fails to state a plausible claim for relief against Ms. Purney-Crider based on excessive force or false arrest.  The court agrees and those claims, as currently pled, are dismissed against Ms. Purney-Crider.  The amended complaint is devoid of any allegations suggesting that Ms. Purney-Crider (or any other KDOR defendant) directly participated in the use of force against or detention of plaintiff Gary Jordan. Plaintiff concede as much in their response, but insist that Ms. Purney-Crider may nonetheless be held liable based on her failure to intervene to stop or prevent the use of excessive force by non-KDOR officers or agents and to stop or prevent the detention.  This allegation is conclusory.  Thus, while the court will permit plaintiffs to amend their complaint to the extent they can allege facts plausibly asserting that Ms. Purney-Crider witnessed the events and had the opportunity to intervene, they may not assert only that Ms. Purney-Crider failed to intercede on Mr. Jordan's behalf.  Finally, while defendants suggest in their reply brief that Ms. Purney-

12

Crider had no responsibility in law or in fact to intervene to stop the alleged violations, they may assert this challenge, if appropriate, in response to plaintiffs' second amended complaint.[7]

*Claims Based on Seizure of Plaintiffs' Property*

Apart from their *Twombly* arguments, defendants further contend that plaintiffs' amended complaint does not allege a Fourth or Fourteenth Amendment violation that is actionable under 42 U.S.C. § 1983 because any seizure of plaintiffs' property was done pursuant to a valid writ of execution regardless of whether officers seized property not covered by the writ or not owned by the delinquent taxpayers.  In response, plaintiffs seem to suggest both that they have asserted a valid Fourth Amendment claim because the writ was not valid and, in the same breath, that they do not intend to assert a Fourth Amendment claim based on the seizure of their property on the date that the writ was executed.  Rather, they suggest that defendants' failure to return their property constituted an unreasonable seizure in violation of the Fourth Amendment (regardless of the legality of the initial seizure) and a violation of their due process rights secured by the Fourteenth Amendment.  Because there is obviously some confusion over the contours of plaintiffs' claims, plaintiffs should amend their complaint to reflect the nature of their claims and defendants, if appropriate, may direct any further challenges on this issue to the second amended complaint.

---

[7] In their motion to dismiss, defendants assert the defense of qualified immunity only as to plaintiffs' false arrest claim.  In addition, defendants contend that the excessive force claim is subject to dismissal because the amended complaint fails to allege actual injury.  Because the court is dismissing these claims on other grounds, the court need not address these arguments.

*Claims Based on Failure to Return Plaintiffs' Property*

Defendants move to dismiss plaintiffs' claims that they were deprived of their property without due process on the grounds that adequate alternative state remedies exist for plaintiffs' loss of property.  *See McKinney v. Revell*, 364 Fed. Appx. 430, 432 n.2 (10th Cir. 2010) (no due process violation occurs if there is an adequate alternative state remedy).  The rule relied upon by defendants, however, applies only when the plaintiff pleads negligent deprivation of property by a state employee or pleads intentional but random and unauthorized deprivation of property by a rogue state employee.  *See Wolfenbarger v. Williams*, 774 F.2d 358, 363-64 (10th Cir. 1985) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984)).  The availability of state remedies is not relevant to and does not bar a claim based on a deprivation resulting from an established or de facto policy, procedure or custom.  *Abbott v. McCotter*, 13 F.3d 1439, 1442 n.3 (10th Cir. 1994). Plaintiffs' allegations concerning the DOR's refusal to return their property cannot, at this stage, be categorized as the type of unforeseeable, random property deprivation addressed in *Hudson*. The court, then, denies defendants' motion on this issue and declines to address the new arguments asserted by defendants in their reply brief.  *United States v. Watson*, 766 F.3d 1219, 1230 n.8 (10th Cir. 2014).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the KDOR defendants' motion to dismiss plaintiffs' amended complaint (doc. 5) is granted in part and denied in part. Plaintiffs may file an amended complaint consistent with this memorandum and order no later than Monday, January 5, 2015.

14

**IT IS SO ORDERED.**


Dated this 16th day of December, 2014, at Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge