## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Amy Hover; Brad Jordan; and
Gary Jordan,**

**Plaintiffs,**

**v.**                                                    **Case No. 14-2410-JWL**

**Unified Government of Wyandotte County
and Kansas City, Kansas et al.,**

**Defendants.**

## <u>MEMORANDUM & ORDER</u>

Plaintiffs Amy Hover, Brad Jordan and Gary Jordan filed suit under 42 U.S.C. § 1983 alleging that defendants violated their Fourth, Fifth and Fourteenth Amendment rights in connection with defendants' seizure and subsequent sale of plaintiffs' property to satisfy tax indebtedness of delinquent taxpayers.  As described in the second amended complaint, the seizure was executed by agents of the Kansas Department of Revenue (KDOR) and the Wyandotte County Sheriff's Department.  After an initial motion to dismiss the amended complaint filed by the KDOR defendants—KDOR agent Carrie Purney-Crider; KDOR's Secretary Nick Jordan; and KDOR's Director of Taxation Steve Stotts—the court permitted plaintiffs to file a second amended complaint.[1]  This matter is now before the court on the

---

[1] In resolving defendants' initial motion to dismiss, the court dismissed all official capacity claims against the KDOR defendants.  While the body of plaintiffs' second amended complaint reflects that ruling and expressly states that the KDOR defendants are sued in their individual capacities, plaintiffs' caption of the second amended complaint still references official capacity claims against defendants Stotts and Jordan.  The court presumes that these references are simply the result of an oversight on the part of plaintiffs' counsel and reaffirms its prior ruling that no official capacity claims remain against the KDOR defendants.

KDOR defendants' motion to dismiss plaintiffs' second amended complaint.  As will be explained, the motion is granted in part and denied in part.

**Background**

The KDOR defendants' motion to dismiss is based primarily on Federal Rule of Civil Procedure 12(b)(6).  In analyzing that motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  Consistent with this standard, the following well-pleaded allegations, taken from plaintiffs' second amended complaint, are accepted as true for purposes of defendants' motion.

On September 18, 2012, the Kansas Department of Revenue issued a writ of execution to seize property owned by Emmett Jordan and his spouse Amy Jordan at their residence in Kansas City, Kansas to satisfy the tax liabilities of Emmett and Amy Jordan.  The property to be seized pursuant to the writ included 22 vehicles and any other real or personal property owned by Emmett Jordan and Amy Jordan.  The writ was executed by numerous law enforcement agents, including defendant Carrie Purney-Crider and other unnamed agents of both the Kansas Department of Revenue and the Wyandotte County Sheriff's Department.  Plaintiffs allege that the agents were armed with automatic weapons and dressed in combat gear.

2

Plaintiff Gary Jordan, Emmett Jordan's brother, was present on Emmett Jordan's property at the time the writ was executed.  Plaintiff Gary Jordan, identified in the amended complaint as a "man in his 60s" was allegedly "shoved to the ground by officers while they pointed automatic weapons at him" and "was detained in a state car for more than two hours with no explanation of why he was being held."  Plaintiffs Amy Hover and Brad Jordan (two of Emmett Jordan's adult children) were not present on the property at the time the writ was executed.  According to the allegations in the second amended complaint, items of personal property belonging to plaintiffs were seized and removed from Emmett Jordan's residence despite the fact that such property was not identified in the writ.

Upon learning that agents had seized their personal property, plaintiffs notified defendant Purney-Crider and defendant Stotts via letters on October 15, 2012 that they claimed ownership of certain property that had been seized.  With respect to defendant Purney-Crider, plaintiffs further allege that they provided proof of ownership for the items that were wrongfully seized.  According to plaintiffs, in a November 2012 telephone conversation between plaintiff Amy Hover and defendant Purney-Crider, defendant Purney-Crider stated that she did not believe that plaintiffs' proof of ownership was authentic and advised that plaintiff Amy Hover "could not stop the sale of the items."  According to plaintiffs, defendant Purney-Crider refused to provide an opportunity to be heard as to their ownership claims in the property.  Ultimately, plaintiffs' property was sold.

There are four counts in the second amended complaint arguably directed toward the KDOR defendants.  In Count I, plaintiffs assert a claim against all "defendants" (which would include the Wyandotte County Sheriff as well as unidentified deputies in the Sheriff's

department) based on violations of the Fourth and Fourteenth Amendments for unlawful search and seizure; deprivation of property without due process; the taking of property without just compensation; and excessive force and false arrest. Plaintiffs allege in Count II that the KDOR defendants violated their constitutional rights by depriving them of their property without due process of law. In Count IV, plaintiffs allege that defendants Stotts and Jordan failed to implement appropriate policies, customs and practices for the Department and that they failed to train and supervise adequately Department employees. Finally, plaintiffs purport to assert a claim against defendants Stotts and Jordan in Count VIII for an accounting relating to the disposition of plaintiffs' property. The KDOR defendants move to dismiss all claims against them.

**Count I of the Second Amended Complaint**

In Count I, plaintiffs assert "general allegations" against all "defendants" for various constitutional violations. The court dismisses this count against the KDOR defendants for several reasons. First, the Tenth Circuit has clearly held in this context that a plaintiff, to survive a motion to dismiss, must differentiate in his or her complaint among individual defendants (rather than refer collectively to "defendants") by identifying what acts are attributable to whom so that individual defendants may ascertain what particular unconstitutional acts they are alleged to have committed. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Count I fails to differentiate among any of the defendants and, in fact, does not differentiate among plaintiffs when, for example, only plaintiff Gary Jordan could possibly assert an excessive force or false arrest claim, as neither Amy Hover nor Brad Jordan

were present during the execution of the writ.  Moreover, to the extent plaintiffs purport to assert a claim against the KDOR defendants for unlawful search and seizure, they have expressly disavowed any such claim in their submissions, repeatedly asserting that they are making no claim against these defendants based on the seizure of their property on the date of the execution of the writ.  To the extent plaintiffs purport to assert a deprivation of property claim against the KDOR defendants, that claim is specifically alleged in Count II of the second amended complaint such that it supersedes any general allegations regarding the same conduct in Count I.

Finally, the second amended complaint fails to state a viable claim for excessive force or false arrest against the KDOR defendants.   The complaint is devoid of any allegations concerning any link whatsoever between Gary Jordan's excessive force or false arrest claims and defendants Stotts or Jordan.   Plaintiffs do not allege that defendants Stotts or Jordan personally participated in the use of excessive force or the false arrest of Gary Jordan and, in fact, plaintiffs do not allege the presence of these defendants at any time during the execution of the writ.  To establish liability, then, plaintiffs would need to show some other affirmative link between the constitutional violation alleged and defendants Stotts or Jordan—presumably through defendants Stotts' or Jordan's failure to train or supervise an employee; through their implementation of policies or customs that led to the constitutional violation; or through their exercise of control or direction over the conduct that constitutes the violation.  *See Dodds v. Richardson*, 614 F.3d 1185, 1212-13 (10th Cir. 2010).  But these avenues are closed to plaintiff Gary Jordan because, as explained below, he has not alleged a plausible claim for the underlying constitutional violation against defendant Purney-Crider, the only KDOR employee alleged to have been present during the execution of the writ.  *See Dodds*, 614 F.3d at 1212-13 (failure-to-

train and failure-to-supervise theories of liability require showing that injury resulted from failure); *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (plaintiff must establish an affirmative link between supervisor's failure to supervise and constitutional deprivation).

With respect to plaintiff Gary Jordan's claims for excessive force and false arrest against defendant Purney-Crider, the second amended complaint states only that "Agent Purney-Crider was present when Plaintiff Gary Jordan was thrown to the ground and detained, but did not intercede." The court specifically advised plaintiffs in resolving the initial motion to dismiss that plaintiffs could amend their complaint to include this failure-to-intercede theory but that plaintiffs could not allege only that defendant Purney-Crider was "present" and failed to intervene. That is exactly what plaintiffs have done in amending their complaint. Moreover, a fair reading of plaintiffs' second amended complaint suggests only that defendant Purney-Crider was "present" in the sense that she was physically on the Jordan property during the use of force and subsequent detention of Gary Jordan. There is no specific allegation to suggest that defendant Purney-Crider observed the use of force against or the detention of Gary Jordan or that she otherwise was in proximity to such conduct. In fact, plaintiffs contend in their submissions that defendant Purney-Crider's involvement in the "unconstitutional action" began when she signed a property receipt to seize a vehicle registered to plaintiff Amy Hover—an event that occurred, by the chronology in the second amended complaint, after the use of force against and detention of Gary Jordan. In the absence of specific allegations placing defendant Purney-Crider at or near the use of force against or detention of Gary Jordan, it is not plausible to infer that defendant Purney-Crider had a realistic opportunity to intervene to stop the use of force or the detention. *See Gruenwald v. Maddox*, 274 Fed. Appx. 667, 674 (10th Cir. 2008)

6

(affirming dismissal of failure-to-intervene claims  where plaintiff failed to allege in complaint that the defendant witnessed the use of force against the plaintiff and did not specify defendant's "whereabouts" during the use of force; rule applies only to an officer who "watches" and does nothing).   Any claim for excessive force or false arrest against defendant Purney-Crider is dismissed.

**Count II of the Second Amended Complaint**

In their second amended complaint, plaintiffs assert a claim against the KDOR defendants for deprivation of property without due process of law.   As alleged in their complaint, the claim is limited to the failure to return and subsequent sale of plaintiffs' property after plaintiffs notified defendants of their ownership interest in the property. According to plaintiffs, defendants, after the seizure of the property and after notification from plaintiffs of their ownership claims in the property, deprived plaintiffs of the opportunity to be heard as to their ownership claims in the property prior to selling the property.  Plaintiffs expressly reaffirm in their submissions that they are not asserting a claim based on defendants' initial seizure of the property on the date the writ was executed.[2]   Defendants first move to dismiss plaintiffs' deprivation of property claim on the grounds that "no cause of action exists for the failure to return property."   The cases relied upon by defendants, however, hold only that the failure to return seized property does not give rise to a Fourth Amendment violation because the failure to return property does not constitute an additional seizure beyond the original seizure.  *See, e.g.,*

---

[2] For this reason, the court does not address defendants' arguments concerning the dismissal of any claim based on the initial seizure of plaintiffs' property.

*Malapanis v. Regan*, 335 F. Supp. 2d 285, 291 (D. Conn. 2004, *aff'd*, 147 Fed. Appx. 219 (2nd Cir. 2005).   Plaintiffs do not dispute this interpretation of the Fourth Amendment in their submissions and they do not suggest that the claim for the failure to return their property is based on the Fourth Amendment.[3]   Moreover, nothing in those cases suggests that no cause of action exists for the failure to return property under the Fifth or Fourteenth Amendment.  *See id.* (while the Fourth Amendment cannot be invoked to regain property, plaintiffs alleged Fourteenth Amendment violation for failure to return property).    Thus, the court construes plaintiffs' claim regarding the failure to return their property as asserting a Fifth and/or Fourteenth Amendment violation.  *See Snider v. Lincoln County Bd. of County Comm'rs*, 313 Fed. Appx. 85, 93 (10th Cir. 2008) (initial seizure of personal property is analyzed under the Fourth Amendment; ultimate disposition of property must comply with protections of procedural due process).

Defendants next continue to press their argument—already rejected by the court in connection with defendants' initial motion to dismiss—that plaintiffs cannot state a claim for the failure to return their property because adequate post-deprivation remedies exist under state law. The court again rejects this argument.  The rule concerning the adequacy of post-deprivation remedies under state law applies only when pre-deprivation process is impossible or

---

[3] Plaintiffs suggest in their submissions that they are asserting a Fourth Amendment claim against the Department of Revenue based on the purported fact that the return on the execution of the writ was never filed with the state court as required by state law and that a certificate of sale was never filed with the court as required by state law.  To the extent the second amended complaint could be read to include such claims, those claims are dismissed as the Department of Revenue is not a defendant in this case; none of these allegations are directed at any of the individual KDOR defendants; and there is no allegation that any of the individual defendants had a duty or were authorized to file the return or the certificate of sale.

impracticable.  "In situations where the State feasibly can provide a pre-deprivation hearing before taking property, it generally must do so regardless of the adequacy of a post-deprivation tort remedy to compensate for the taking." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (cases in which post-deprivation tort remedies are all the process that is due are limited to those cases in which such remedies are the only remedies that the State could be expected to provide). According to plaintiffs' theory of the case as articulated in the second amended complaint, they were entitled to a hearing before the Department of Revenue sold property in which they asserted an ownership interest.  Because a hearing in such circumstances is feasible, the availability of post-deprivation remedies under state law is not fatal to plaintiffs' claims.  *See Urban v. Tularosa*, 1998 WL 694465, at * (10th Cir. 1998) (because defendants could reasonably foresee deprivation and could have prevented deprivation by giving notice and opportunity to be heard prior to deprivation, defense concerning adequate post-deprivation remedy did not bar § 1983 claim).  Again, plaintiffs' theory of the case is not that a hearing was required prior to the seizure, but that a hearing was required prior to the sale of the property. Under that theory, it cannot be claimed that the sale of plaintiffs' property was unpredictable or not foreseeable.  Defendants' argument is rejected.

Defendant Jordan next asserts that Count II of the second amended complaint fails to state a plausible claim for relief against him because the claim—which is expressly based on defendants' failure to return plaintiffs' property after plaintiffs notified defendants of their ownership interest in the property—is devoid of any allegations remotely suggesting that plaintiffs notified defendant Jordan of their property claim or that defendant Jordan otherwise had any personal knowledge or participation in the failure to return plaintiffs' property.  The

9

court agrees and dismisses this claim against defendant Jordan.  While the second amended complaint suggests generally that "defendants" were notified of plaintiffs' ownership interest in the property, there is no allegation plausibly suggesting that plaintiffs notified defendant Jordan of their ownership interest or that he otherwise had knowledge of their claim or personally participated in the alleged constitutional violation.  The only specific allegation concerning defendant Jordan with respect to Count II is plaintiffs' allegation that defendant Jordan "refused to provide a chance for Plaintiffs to be heard as to their ownership interest in the items."  But without any allegation that plaintiffs contacted defendant Jordan about their interest or that defendant Jordan otherwise had knowledge of their ownership interest, any claim that defendant Jordan personally failed to return their property after receiving notification of their ownership interest is speculative at best.  Because the allegations in the second amended complaint do not support a plausible inference of defendant Jordan's personal knowledge or personal participation in the alleged constitutional deprivation, this claim must be dismissed as to defendant Jordan. *See Shepard v. Sullivan*, 65 Fed. Appx. 677, 680 (10th Cir. 2003) ("No allegations in appellant's complaint or response demonstrate knowledge or personal participation, or support a reasonable inference of such knowledge or conduct.").[4]

Defendant Stotts also asserts that Count II fails to state a plausible claim for relief against him.  The only allegations in the second amended complaint concerning defendant Stotts' direct or personal participation in the alleged deprivation of plaintiffs' property without due process are that plaintiffs notified defendant Stotts on October 15, 2012 via letter "that the property

---

[4] While plaintiffs allege in their response (in conclusory fashion) that they directly notified defendant Jordan about the deprivation of their property, their citation to the second amended complaint does not support that allegation in any respect.

[identified in the complaint] was their personal property" and that defendant Stotts "refused to provide a chance for Plaintiffs to be heard as to their ownership interest in the items."  There is no allegation that defendant Stotts responded to the letter.  According to defendant Stotts, this claim must be dismissed because the mere fact that plaintiffs sent a letter to defendant Stotts putting him on notice that they asserted an ownership interest in certain property is insufficient as a matter of law to hold defendant Stotts liable under § 1983 based on his alleged personal participation in the constitutional violation in the absence of any allegation that defendant Stotts knew or should have known that the property was on the verge of being sold without an opportunity for plaintiffs to be heard as to their ownership claims.  The court agrees that the facts alleged in the second amended complaint, even if true, fail to state a plausible claim for relief against defendant Stotts and dismisses Count II against defendant Stotts.

According to plaintiffs, defendant Stotts' failure to respond to plaintiffs' letter and his failure to prevent the sale of plaintiffs' property after receiving plaintiffs' letter are sufficient to constitute personal involvement in the alleged constitutional violation.  While it is true that personal involvement may be found by showing that a supervisor failed to act on information indicating that unconstitutional acts were occurring, *see Dodds v. Richardson*, 614 F.3d 1185, 1196 n.5 (10th Cir. 2010), plaintiffs do not allege that they ever notified defendant Stotts that his employees were about to sell plaintiffs' property or that his employees were otherwise on the verge of violating plaintiffs' constitutional rights.  They do not allege that defendant Stotts would have or should have known this information despite plaintiffs' failure to notify him about the imminent sale of their property.  They do not allege that they asked defendant Stotts to act on any of the information they provided to him in the letter.  Rather, they allege only that they

notified defendant Stotts that they had a property interest in some of the seized property and that, thereafter, the property was sold without any resolution of plaintiffs' ownership claims. Without more, plaintiffs cannot state a claim against defendant Stotts based on his personal participation in the deprivation of their property without due process of law.  *See Platt v. Incorporated Village of Southampton*, 391 Fed. Appx. 62, 65 (2d Cir. 2010) (allegation that a supervisory official ignored letter protesting new operational guidelines for police officers was not sufficient to state a claim that the official was personally involved in the unconstitutional conduct).  Finally, there is no allegation that defendant Stotts ever learned of an alleged constitutional deprivation and failed to remedy that violation.  *See Garcia v. Furlong*, 1996 WL 128130, at *3 (10th Cir. 1996) (while personal participation may be shown through evidence that official learned of a violation through "a report or appeal" and failed to remedy the wrong, no evidence that official ever learned of violation).

In the end, plaintiffs' mere allegation that they sent a letter to defendant Stotts in which they asserted an ownership claim in the property, is not sufficient to establish defendant Stotts' liability under § 1983.  This claim is dismissed against defendant Stotts.  *See Goris v. Breslin*, 402 Fed. Appx. 582, 584 (2d Cir. 2010) (official at Department of Corrections whose personal involvement was limited to receipt of two letters from plaintiff failed to establish requisite personal involvement to establish liability under § 1983); *Davis v. Arkansas Valley Corr. Facility*, 99 Fed. Appx. 838, 843 (10th Cir. 2004) (holding defendant warden was not implicated under § 1983 merely because plaintiff copied him on correspondence outlining complaints about medical care); *Ross v. Krueger*, 2015 WL 1470534, at *12 (D. Nev. 2015) (plaintiff's mailing of letters to Commissioner defendants giving them notice of plaintiff's claims is insufficient to

constitute personal involvement in alleged constitutional violations); *Barnes v. County of Monroe*, ___ F. Supp. 3d ___, 2015 WL 602860, at *13 (W.D.N.Y. 2015) (receipt of letters or grievances, by itself, does not amount to personal involvement); *Hull v. Colorado Bd. of Governors*, 805 F. Supp. 2d 1094, 1106 (D. Colo. 2011) (University President's receipt of and failure to respond to letter regarding mistreatment did not amount to affirmative link between constitutional deprivation and supervisor).[5]

Finally, defendant Purney-Crider moves to dismiss Count II.  In their second amended complaint, plaintiffs allege that defendant Purney-Crider was physically present during the execution of the writ and the seizure of their property; that they notified defendant Purney-Crider of their ownership interest by letter in October 2012; that plaintiff Amy Hover mailed to defendant Purney-Crider proof of ownership for the property that was seized; and that plaintiff Amy Hover thereafter had a telephone conversation with defendant Purney-Crider in November 2012 in which defendant Purney-Crider stated to the effect that she did not believe that the proof of ownership was real and that plaintiff Amy Hover "could not stop the sale of the items." According to defendant Purney-Crider, these allegations do not state a colorable claim against her for deprivation of property without due process of law.  Specifically, defendant Purney-Crider alleges that plaintiffs' failure to allege that defendant Purney-Crider was responsible for the sale of the property or that she had the opportunity to stop the sale is fatal to her claim.[6]  The

---

[5] In the alternative, defendant Stotts is entitled to qualified immunity as to this claim because a reasonable person in his position would not have known that his failure to act upon receipt of plaintiffs' letter would have violated the constitution.  *See Surita v. Hyde*, 665 F.3d 860, 880 (7th Cir. 2011).

[6] Defendant Purney-Crider also makes other arguments that are not relevant to the court's analysis.  She alleges that there is no allegation that she was personally involved in the seizure

13

court disagrees.  Based on plaintiffs' allegations that defendant Purney-Crider personally told plaintiff Amy Hover that Ms. Hover "could not stop the sale of the items" and that she doubted plaintiff Hover's ownership claims, it is plausible to infer that defendant Purney-Crider had some responsibility for or authority over the sale of the disputed property.

Defendant Purney-Crider makes an argument for qualified immunity on this claim based on the Fifth Circuit's decision in *Baddour, Inc. v. United States*, 802 F.2d 801, 807-08 (5th Cir. 1986).  *Baddour* concerned the federal administrative scheme created to resolve tax-related disputes with the IRS.  In that case, the IRS seized and sold the plaintiff's property despite the fact that the plaintiff was not the delinquent taxpayer but merely stored goods in the taxpayer's plant.  The Fifth Circuit rejected the plaintiff's constitutional claims stemming from the seizure on the grounds that the plaintiff had "all sorts of rights against an overzealous officialdom."  *Id.* at 808.  The Circuit highlighted the statutory scheme which provided a process for the aggrieved party to submit a written request for the return of property prior to sale directly to the District Director for the IRS.  *Id.*  Defendants here do not direct the court to any regulation or statute permitting plaintiffs to seek immediate review of the DOR's actions prior to sale from the DOR itself.  This is a significant distinguishing fact from *Baddour*.

Defendants insist that plaintiffs had numerous avenues of recourse under state law like the plaintiff in *Baddour*.  Defendants assert that plaintiffs could have intervened in the Writ of Execution action to assert their ownership interests.  Defendants, however, have not alleged that

---

of the property and that plaintiffs could have challenged the validity of the seizure under state law.  Because plaintiffs are not asserting a claim based on the seizure of the property, the court need not address these arguments.

plaintiffs—particularly those who were not on the property at the time of the execution of the writ—were notified of the writ of execution such that they could have intervened prior to the sale of the property.  Defendants assert that plaintiffs could have filed a chapter 77 action for judicial review of agency actions.  That chapter, however, requires a "final agency action" and defendants have not alleged that plaintiffs could have challenged the DOR's process as a "final agency action" prior to the sale of plaintiffs' property.  Finally, defendants assert that plaintiffs could have immediately commenced a district court action pursuant to K.S.A. § 60-907 for injunctive relief concerning "illegal" acts of public officers.  The Kansas Supreme Court, however, has held that this provision applies only to actions of an administrative official taken without authority or action which is permeated with fraud or corruption.  *Mobil Oil Corp. v. McHenry*, 200 Kan. 211, 234 (1968).  The allegations in the second amended complaint do not reflect that this statute would provide plaintiffs with a remedy for the deprivation alleged.

In sum, the allegations in the second amended complaint do not reflect that defendant Purney-Crider is entitled to qualified immunity.  Moreover, defendant Purney-Crider has not sufficiently supported that defense with allegations or evidence demonstrating that plaintiffs had available to them "all sorts of rights" prior to sale against the DOR's conduct.  The Baddour argument, while it might yet prevail, is premature on this record.

**Count IV of the Second Amended Complaint**

In Count IV of the second amended complaint, plaintiffs assert a claim against defendants Stotts and Jordan for "failure to implement appropriate policies, customs and practices" precluding employees from unlawfully depriving "innocent parties" of property without due

process and for implementing policies, customs or practices permitting employees to deprive innocent parties of property without due process of law (i.e., failing to provide a hearing to resolve ownership claims of seized property).  Plaintiffs further assert that defendants Stotts and Jordan failed to train their employees to provide due process to those persons claiming an interest in property seized and failed to supervise their employees regarding the same. Defendants move to dismiss this claim in its entirety.  As will be explained, the motion is granted.

Defendants move to dismiss plaintiffs' "policy and custom" theory of supervisory liability on the grounds that the allegations in the second amended complaint are entirely conclusory.  Plaintiffs have not responded to this argument in any respect in their submission and, in fact, do not refer to this theory of liability at all.  The court, then, deems plaintiffs to have abandoned this theory of supervisory liability.

In its prior memorandum and order resolving defendants' initial motion to dismiss, the court dismissed plaintiffs' conclusory failure-to-train and failure-to-supervise claims against defendants Stotts and Jordan because plaintiffs, in support of that claim, argued only that the decision to send a "military-style presence to collect delinquent taxes; to seize the property of innocent individuals; and to sell that property despite competing claims of ownership without providing an opportunity to be heard—is so unconscionable as to establish a failure to train and supervise."  As explained by the court, established Tenth Circuit law precludes a plaintiff from relying solely on the constitutional violation to establish a failure-to-train or failure-to-supervise theory of liability.  *See Lewis v. McKinley County Bd. of County Commr's*, 425 F.ed Appx. 723, 726 (10th Cir. 2011) (allegation that officer was "obviously ill-trained" in light of alleged

16

violation did not state a claim against municipality); *Hook v. Regents of Univ. of California*, 394 Fed. Appx. 522, 536 (10th Cir. 2010) (to establish supervisor's liability under 1983, plaintiff must show more than constitutional violation by supervisor's subordinate).  While the court permitted plaintiffs an opportunity to amend their complaint, plaintiffs' second amended complaint includes no specific factual allegations that would support a failure-to-train or failure-to-supervise theory of supervisory liability and, in their submissions, they again rely solely on the constitutional deprivation to establish their failure-to-train and failure–to-supervise claims. The mere fact that one agent, on one occasion, sold property without providing an opportunity to resolve competing ownership claims in that property does not plausibly suggest that defendants Stotts and Jordan personally participated in the underlying violation.  Because their complaint fails to include allegations to nudge these claims across the line from conceivable to plausible, and because this is the second opportunity plaintiffs have had to allege these claims, the claims are dismissed.  *Dorf v. Bjorklund*, 531 Fed. Appx. 836, 837 (10th Cir. 2013) (conclusory allegations concerning supervisory liability under failure-to-train and failure-to-supervise theories were properly dismissed); *Boles v. Newth*, 479 Fed. Appx. 836, 840 n.3 (10th Cir. 2012) (allegations which merely suggest that supervisor was in charge of other state actors who actually committed the constitutional violation is not sufficient to establish supervisory liability; plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights).

In any event, defendants Stotts and Jordan have proffered a quality immunity defense as to Count IV.  To overcome the qualified immunity of a supervisor, a plaintiff must show that the defendant-supervisor took deliberate action in directing the constitutional violation, or had

17

actual knowledge of the violation and allowed the violation to continue. *DeAnzona v. City & County of Denver*, 222 F.3d 1229, 1234 (10th Cir. 2000). There are no allegations in the second amended complaint plausibly suggesting that defendant Stotts or defendant Jordan took deliberate action in directing the violation or that they had knowledge of the violation and permitted it to continue. The supervisory defendants are entitled to qualified immunity as to Count IV.[7]

**Count VIII of the Second Amended Complaint**

In their second amended complaint, plaintiffs set forth a new claim for relief against defendants Stotts and Jordan for "an accounting of property received, disposition of property, amounts received from sale of property and application of proceeds." In support of that claim, plaintiffs allege in their second amended complaint that the "Department of Revenue has never provided an accounting relating to the disposition of property." In their submissions on the motion to dismiss, plaintiffs assert that the new claim "will aid all parties in gauging the amount of damages Plaintiffs suffered by the improper seizure of their property." Plaintiffs further assert that the claim will allow the parties to determine "the amount of loss" resulting from the

---

[7] Dismissal of this claim as to defendant Stotts is appropriate for yet another reason—the second amended complaint is devoid of any allegation that defendant Stotts was responsible for implementing policies concerning the seizure and sale of property or for supervising or training agents in the department. Rather, plaintiffs allege only that defendant Stotts "is responsible for administration and compliance of [sic] Kansas taxes." *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (to show supervisor liability under section 1983 based on implementation of policy, plaintiff must show that the supervisor promulgated or was responsible for the policy); *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (supervisor's role for purposes of section 1983 liability must be more than one of abstract authority over individuals who actually committed constitutional violation); *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1154 n.3 (10th Cir. 2006) (plaintiff must allege that supervisor was responsible for training).

underlying constitutional violations.  Clearly, then, plaintiffs' "claim" for an accounting is not a separate cause of action but simply a method through which plaintiffs seek to calculate their damages sustained as a result of the underlying violations of law alleged by plaintiffs elsewhere in their second amended complaint.  Defendants' motion to dismiss this "claim" is denied, then, because there is no claim to dismiss.

That being said, the court doubts whether an equitable accounting is available to plaintiffs as a method of calculating their damages in this case.  An accounting is proper only when there exists "no adequate remedy at law."  *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478 (1962).  Thus, an equitable accounting is warranted only when "the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them."  *Id.*  It is a "rare care" when computational complexities will render a legal remedy inadequate, *see Haynes Trane Service Agency, Inc. v. American Standard, Inc*., 573, F.3d 947, 965 (10th Cir. 2009), and plaintiffs here do not allege that money damages are not an adequate remedy or that they will be unable to determine damages any other way.   Nonetheless, it is premature to decide on defendants' motion to dismiss, prior to the commencement of discovery, whether plaintiffs are able to pursue this remedy and, if so, whether they can obtain that remedy from any of the remaining defendants in this case.

**Service of Process**

Lastly, defendant Purney-Crider moves to dismiss plaintiffs' second amended complaint for lack of personal jurisdiction in light of plaintiffs' failure to obtain service of process on her.[8] In response, plaintiffs contend that this argument is not ripe because plaintiffs have 120 days from the filing of the second amended complaint to obtain service and, in any event, that defendant Purney-Crider consented to electronic service of the second amended complaint by virtue of the fact that their counsel is a registered user of the court's electronic case filing (ECF) system. As will be explained, the court concludes that proper service has not been obtained, but denies the motion to dismiss on this issue and grants plaintiffs a permissive extension of time to obtain proper service on defendant Purney-Crider.

As noted, plaintiffs' response to the motion to dismiss focuses exclusively on the filing of the second amended complaint. That focus, however, is misplaced where it is undisputed that plaintiffs never obtained proper service of the initial summons and complaint. The Tenth Circuit has held that 120-day period in Federal Rule of Civil Procedure 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint. *Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1148-49 (10th Cir. 2006). Because defendant Purrney-Crider was named as a defendant in the initial complaint, plaintiffs were required to obtain service on her within 120 days of the filing of the initial complaint. Plaintiff cannot rely on the electronic filing of the amended complaint for service where service of the initial summons and complaint was not obtained pursuant to Federal Rule of Civil Procedure 4(e). *See Flemming v. Smith*, 2014 WL 3698004, at *3 (N.D.N.Y. 2014) (new

---

[8] Defendants Stotts and Jordan make the same argument, but that argument is now moot as the court has dismissed all claims against them.

summonses must be issued for amended complaint where proper service of initial summons and complaint was not achieved); *Downing v. Wanchek*, 2008 WL 4330403, at *2-3 (E.D. Cal. 2008) (mere service by mail of first amended complaint not adequate where service of process of initial summons and complaint was never effected on defendants).

Despite the fact that proper service has not been achieved as to defendant Purney-Crider, the court concludes that a permissive extension of time to effect proper service is warranted, particularly as defendant Purney-Crider is on notice of the lawsuit, she has asserted no prejudice by a delay in service, and it appears as if the statute of limitations would bar the refiling of this action. *See Hagan v. Credit Union of Am.*, 2011 WL 6739595, at *3 (D. Kan. 2011) (discussing pertinent factors that weigh in favor of permissive extension to obtain service).   Plaintiffs must obtain proper service of the summons and the second amended complaint no later than **June 16, 2015.**  No further extensions are contemplated.

I**T IS THEREFORE ORDERED BY THE COURT THAT** the KDOR defendants' motion to dismiss plaintiffs' second amended complaint (doc. 33) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs' claims against defendant Nick Jordan and defendant Steve Stotts are dismissed with prejudice.

**IT IS SO ORDERED.**

21

Dated this 17th day of April, 2015, at Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge